We have three cases today. But before we get started, I actually have a motion for admission to the bar of this court. Arianna Evers. And I will direct it at my colleagues to move the admission of Arianna Evers, who is a member of the bar and in good standing with the highest court of Massachusetts. She has been my law clerk this past year. And so on personal knowledge and with great confidence, I will say that I am more than satisfied that she possesses the necessary qualifications. Well, your motion has been granted. Thank you. Today first is number 141036, Terry v. Newman. Mr. Culver, whenever you're ready. Good morning, your honors. I'm Michael Culver for the appellant, Randall Terry. Today we're dealing with that portion of the statute under section 2A that states a mark is prohibited if it may falsely suggest a connection with a person. The board has developed a four-pronged test to implement section 2A. In this case, they recited the four-pronged test, but they did not apply it. They applied a test that's completely different from what they recited. Can you just, it seems to me that the board relied either entirely or very close to entirely on the requirement of unique and unmistakable association. Yes. Do you challenge the validity of that requirement, which seems to come directly out of Notre Dame? Excuse me. I think in Notre Dame they said it one way, unmistakably associated, and then later they said points uniquely, and I think they meant the same thing. I don't think they meant, they never combined them to say uniquely and unmistakably. Assume it's one requirement. Do you argue either that that is not a requirement under Notre Dame or that if it is a requirement under Notre Dame, it was dicta in Notre Dame, or are you asking to overrule Notre Dame? I'm trying to understand your position about Notre Dame and its force with respect to that requirement. That is a very good question. What to do with Notre Dame. In 1983, I cited this in the brief, the board originally thought Notre Dame did not change the law. There's like four or five cases that they issued saying Notre Dame brought no change. Then they changed it, developing this four-pronged test, and they've been using it for 30 years. I made several arguments below that the test needed to be altered. You can see the language in the opinion of the board. It said we cannot alter it. We're bound by Notre Dame. We will not entertain any notions of changing the test. On the other hand, Professor McCarthy's thesis on trademarks covers Section 2A. It's 1976. He labels the discussion in Notre Dame about the right of publicity, he labels that as dictum. It's difficult to say whether it's dictum or not. Clearly Notre Dame affirmed the board's dismissal. So on what grounds did they do that? And it rejected both a 2D and a 2A claim? Yes, there's no question about the 2D claim as it relates to this case. Then they went on to consider the university's 2A claim. They described the board's test, current at the time, the board thought it had to follow the Morehouse case. In doing so, the board said it has to be at least a similarity under 2D plus the element of intent. That was the operative test at the time. Notre Dame recites that standard. It says we're not going to review it. If you have the West version, it's at page 1376, left-hand column, final full paragraph. See in the first sentence where it talks about Medtronics, that was the current test the board used. A likelihood of confusion and an intent to trade upon the goodwill. And then Notre Dame says we need not decide here whether this interpretation of section 2A is correct. The next sentence is what causes confusion because it seems to repeat the board's test. Well, when I was reading it, my impression was that what the court was saying in Notre Dame was that the one, likelihood of confusion, and two, intent. That is what, the second part of that is what did not need to be decided, but nonetheless, likelihood of confusion was not shown and therefore the 2A claim failed. So it would seem from that reading that Notre Dame still kept the Morehouse standard intact and therefore the board has been wrong for 30 years. Well, the question I guess is, is likelihood of confusion or something equal to or stronger than likelihood of confusion necessary for section 2A? No, I mean you look at the difference in the statutory language. I understand, but for purposes of reading Notre Dame, it does seem that what the Notre Dame court is saying is that at the bottom of the first column of 1376, that there is no proof of likelihood of confusion and therefore no false association. Right. Now, in some ways you could say that equates to the board's test of the same or close approximation. In other words, the two, the identity and the mark should be highly similar. That's one way of interpreting that element of Notre Dame as being continuous. You have to find that closeness more so than likelihood of confusion, but they've dropped out the element of intent, which they used to have. So, if that's the holding of the case, then the next discussion, Notre Dame says, to the university, what sort of right do you have? Let's look at the legislative history. And they looked at Prosser's Handbook on Courts and so forth. And then it gave out the language that you see being embodied in the four-pronged test of the board about uniquely, unmistakably associated and points uniquely. I mean, all of that would seem to be dicta. Let me just ask you about that, and I guess it has something to do with a confusion that I've had in thinking about your particular case. Is it right that 2A, the false suggestion provision, goes beyond likelihood of confusion as to source, source of current activities, that's an issue in 2D, and protects even against a suggestion of some kind of association that wouldn't lead people to think that the challenger was responsible for the current activities? And I guess what I was thinking about your particular case is you have to identify a false suggestion. Now, I'm assuming for purposes of this question that Mr. Newman's use of Operation Rescue does convey to many people in the public some kind of association with Mr. Terry by way of lineage through some kind of organizational family. The problem with that is that that would be true, so that can't be a false suggestion. I don't mean kind of direct organizational dissent, but organizational relationship through origins of the current, his current organization. So you have to be involved with Mr. Newman's current activities. That you assert to be false. But it doesn't seem to me that 2A is limited to those two things, and so if it's not limited to the current ones, then Notre Dame in Part 3, the part you were just talking about, was addressing a real issue and setting a standard in resolving that real issue. Was the university's good name potentially harmed by some suggestion of affiliation, even if it wouldn't confuse consumers into thinking that, was it cheese products, were being sponsored by the university? Right. So I'm failing, I'm having a hard time seeing why the language about unique and unmistakable can be viewed as dicta in Notre Dame. And if it's not dicta, then I'm not sure how you can challenge the board's application of that standard here. That's the central puzzle for me. Okay, accepting that it's not dicta, my challenge would be that they didn't apply their own test. They made up a new test. Everything in the board's, well not everything, but it is sufficient that the board says a half dozen times, we've got lots of evidence to come to the finding that Operation Rescue is not uniquely and or unmistakably associated with Mr. Terry. I have a hard time seeing that that finding is lacking in substantial evidence support. So the question is, if that is an adequately supported finding, where does your challenge stand? It seems to me it has to be wrong standard, yet it comes right out of Notre Dame. No, it is. Let's look at example, page A11 of the opinion. Right about in the middle of the page, the board is writing, it says, quote, there is no question that in a case under section 2A, we must require that the purported name or identity or persona point This is not the addendum page. Addendum 11? No. You have different joint appendix pages from addendum pages, right? Unfortunately. What's the actual page number of the board's opinion that you're relying on? This is the opinion on reconsideration and it's page 11. Okay, that's A52. Okay, this is addendum 52A11. All right. I started it just in the middle of that paragraph, right after the case cites to Jackson International and Chi Chi's, the sentence after that. There is no question that in a case under section 2A, we must require that the purported name or identity or That's the Notre Dame standard. No, it is not. What Notre Dame says explicitly is, does defendant's mark point to the plaintiff? There's a big difference. What the board tested was Randall Terry's own identity. It says, your identity does not even point to you. Well, that inquiry does not even come up under the four-prong test. I mean, Terry could prove his identity. Let's look at a simple case. I'm not sure I follow that argument. You're saying that the language purported name or identity or persona refers to what, in your view? The plaintiff has a persona or identity. The plaintiff is referred to in the last phrase in the sentence, unmistakably to the plaintiff. So the purported name or identity or persona is something other than the plaintiff. Presumably the trait name in question. No, no, no. Clearly it's not. It can't be the plaintiff. In other words, this sentence says, does the plaintiff's persona point uniquely to the plaintiff? That doesn't make sense to me. That's why the board's wrong. Well, I mean, clearly in a four-prong test. It doesn't make sense grammatically. If we read that sentence as saying the mark has to point unmistakably to the plaintiff, that's the correct recitation of the Notre Dame test, right? That is. Okay. But they never examined whether Newman's mark points to Randall Terry. They kept referring to Randall Terry's own use. That's why they got hung up on the word founder. And they pointed to some other third-party use. But that's not the defendant's mark either. The best evidence of does Newman's mark point to the plaintiff, the best evidence of that is the webpage he submitted, where he thought he was telling the PTO, this is how I use the mark. And he discussed Operation Rescue. So he meant to point to at least that organization, that association that was started in the late 1980s. That's what he thought. He wanted to point at least that far. You could say he didn't want to potentially usurp Terry's identity. I'm not making that argument. I'm arguing that when he said to the PTO, this is what I mean by the words Operation Rescue, he was referring to the organization that Randall Terry founded, led, and disbanded. It was his. Mr. Culver, you've used, actually, your rebuttal time. I'm sorry. No, no, no. Our question is, we'll restore the rebuttal time. All right. Thank you. Mr. Gibbons. Good morning. I'd like to start by taking issue with my colleague's claim that the central issue in Notre Dame was simply dictated. I think the court was very clear when it says, the initial and critical requirement is that the name or equivalent thereof must be unmistakably associated with a particular personality or persona. Subject to some kind of intent exception. Sure. That was included, that if it was indeed the intent of someone to falsely suggest a connection, that in the same way that a consent agreement is taken as proof that there is no likelihood of confusion, the court said that if you are actually trying to falsely suggest a connection, we're going to assume that you succeed. Well, why is the uniqueness, unmistakability language of Notre Dame a proper interpretation of what would seem on its face to be broader language in 2A, namely false suggestion? Is this an argument that the precedent says what the precedent says, or can you explain why that? Well, I'm happy to rely on its better precedent for 30 years, but I think that was actually a good decision, in that Section 2A has broader application than, say, Section 2D. When they ruled that this was dealing with a protection of a person's persona, they then went on to say it doesn't require use in commerce. The claim doesn't have to be made within the first five years. This is a broad application that could possibly swallow up all other trademark claims, and their reasoning was that wasn't the statutory intent, that the intent was to protect a particular type of claim, and that claim was when someone's persona is invaded,  Suppose you had an organization in which there were two founders and principals for a number of years. Wouldn't a use of that name by somebody later, independently of authorization of either of the two, falsely suggest an association with both of them, and therefore as to neither one uniquely? I kind of take issue with the premise that the founder of an organization automatically gets to take the organization's name as an identity. That wasn't the point of the question. Let me state it again. Uniquely would seem to exclude the case where a use of a trademark falsely suggests an association unmistakably with two people. I think if you have two people who both have the right to use it and both have established an identity and a trademark, then yes, it would exclude cases that... What kind of sense does that make? The ruining two people's personas you think is outside 2A because it's two rather than one? I think there's a possibility that if they jointly had rights in a persona, I think that would be treated as a unitary right, and that would be considered unique. But I think at the point that you have multiple people all having the same persona, I think at that point you're outside the scope of saying you're falsely suggesting a connection to that person because that person over there also has that persona. What do you understand by the use of the term unique in this context? Is it that the word John's barbecue sauce doesn't point uniquely to one person but John Peterson Jr.'s barbecue sauce does? Is that all you think that uniquely means here, or is there something more to it than that? I think that when we talk about a unique identity, yes, if you would like to use John's barbecue sauce, I don't think that every John has a right to stop you. I think that if you're trying to put out John Peterson's barbecue sauce, that yes, John Peterson can take issue with it. And I think that those are also the sort of claims that are more properly brought under Section 2C. Does the word unique add anything to the unmistakable part of the test? I think unmistakably to me implies a certain degree of uniqueness. So if a mark points unmistakably to a person, falsely, can you conceive of a circumstance where that may not be unique, but it still unmistakably points to a person? And if it is not unique but unmistakably points to a person, would it still be a violation? I think you can probably make the argument that de minimis uses may not count against uniqueness, but that's really not the case we have here where there's an instance of literally hundreds of other organizations that were using this name. To return to Judge Toronto's question about multiple people in the context of what the word unique means here, we have a product, Paul Newman's salad dressing. Suppose it were Paul Newman and wife salad dressing. You wouldn't argue, would you, that that does not uniquely point to Paul Newman and wife? So unique is not really being used in the usual sense, I take it, in the context of the opinion in Notre Dame. We said unique would normally mean it's one of a kind as opposed to two related entities. Right, and I do think when you start talking about things like a Paul Newman and wife sauce, you could say that Paul Newman and his wife have a unitary identity and it is uniquely pointing to that couple. Well, if it weren't a couple, suppose it's Paul Newman and... some other actor, George Clooney, where the only relation between them is with respect to the salad dressing. They would still, it would uniquely point to them. I'm really... I mean, that sounds to me exactly how you're reading the word unique in this context. Well, in that case, that sounds like both Newman and Clooney would have a cause of action against them under 2A. But I think to me, the unmistakably is probably more important than the uniqueness. I'm sure there probably are hard cases dealing with two Paul Newmans out there, but that's very much not the situation we have here. Where, like I said, we're talking about literally hundreds of other organizations that were using this name independently. Well, it kind of is raised here, though, isn't it? We could conclude that Operation Rescue unmistakably points to Randall Terry because he certainly has a long history with the group. But then there would still be the problem of whether it's unique or not and it seems like that's a big portion of the board's reasoning that, as you point out, hundreds of organizations perhaps over the years have used that. So it does seem that we need to flesh out the meaning of both unique and unmistakable. I'm not sure. The board concluded independently that Operation Rescue did not point to Randall Terry, that it instead pointed to the movement as a whole of which Randall Terry was simply one member, an important one, but the name pointed primarily to the group as a whole rather than an individual that happened to lead it during the early days. You said that the board found that Operation Rescue doesn't suggest or point to Mr. Terry at all in any significant range of the public. What are you pointing to? Well, I believe it was page 23 of the decision where it says the Operation Rescue group... Are you in the addendum? No, no, the actual decision, page 23. The very top of the page, the name Operation Rescue does not point uniquely and unmistakably to Petitioner. And they went on, the very first point was that Operation Rescue movement was a collective phenomenon, that it was not an individual endeavor of Petitioner but a movement of activists. Right, and I took that to be consistent with the whole tenor of the decision that said Operation Rescue was not a single thing associated with a single person and therefore it would suggest many different things. But I didn't remember that there was ever a place where the board said Mr. Terry is not among the things that would be suggested by that name. I took the tenor of the decision to saying that, and I do not have a page number on that, but in the response they made to the request for reconsideration where Mr. Culver argued that they had not said that Randall Terry was suggestive of Operation Rescue, the board said yes. That was essentially our entire decision, was that Operation Rescue does not point to The board's decision was that Randall Terry was the founder of Operation Rescue which is a statement of historical fact and that it was perceived by the public as a simply something on his resume. That it was not perceived that when someone says Operation Rescue it means Randall Terry, particularly because the high point of the movement took place after Randall Terry had left the leadership role in that movement. I would like to address the one issue that was raised by Mr. Culver of dealing with Newman's intention as he claims that that raises an issue that irrespective of everything else should be taken as a false suggestion of connection. Mr. Newman's intentions were never, no evidence has been submitted of them in this proceeding. He was never asked to bring a discovery, he was never called for a deposition. The only evidence that Terry is raising as to his intentions at this late date is a webpage which indicated knowledge that Terry had been a part of the Operation Rescue movement during the 80's. And it's worth noting that knowledge was specifically held in the Notre Dame decision to not be sufficient to show intention. Matter of fact, even though it was granted that the defendant in that case knew of Notre Dame and that Notre Dame had impressive goodwill amongst the country, that was not sufficient to show any intention to trade on that or to suggest a connection to that. Let me ask you a question returning to an issue that Mr. Culver raised and that was the subject of some questioning. Do you have a copy of the Notre Dame opinion there or do you know it well enough that I can ask? I'm a little confused about exactly what the opinion means in the passage starting at the middle of 1376 in which the court says the board has applied a more stringent test inquiring likelihood of confusion and intent to trade and then says there's no need to decide that because there's no proof of likelihood of confusion, which sounded to me when I read it as if they were saying no need to decide the second issue of intent, but on the next page they go ahead and decide and rely on the question of intent. What do you understand the no need to decide? I read that as saying that the board was using a test for 2A of being Section 2A plus intent and since we're going to get rid of that test there's no real need to consider whether or not they applied it correctly because here's the new test and the new test is uniquely and unmistakably. Right, and then so why do we then have a discussion of intent? Well, I think the court raised the issue of intent because they thought that might help them in showing whether or not the name did point unmistakably. Okay. I look at it as looking at consent agreements and the likelihood of confusion. All right. As you said, the test in Notre Dame is that the party must show that the name uniquely and unmistakably points to the plaintiff. Once that test is in place, and I don't think that Terry has shown any reason for that to be overturned, all of the evidence that the board has cited seems to be fairly substantial, if not overwhelming, to show that the name does not unmistakably point to Terry. And as a result, I appreciate your consideration. Thank you. Mr. Culver, you have five minutes. Yes, five minutes. Thank you. In the choice of unmistakably and uniquely, I think the better word is unmistakably. You can certainly conceive of a situation where, to use your example, a mark could violate multiple persons' identities. The three Marx brothers, or Laurel and Hardy, each one of those people, depending upon what the mark is, if it evokes each one of their identity, each person should have their own cause of action. And a mark could easily encompass multiple persons. Suppose one pursued that line. What does that make of the board's decision here? Is a remand necessary? I assume you don't think, in which case tell me why, if we relied just on the unmistakably portion, you don't think that the board's decision should be affirmed on that alone? And if you don't think that, explain why. It's difficult to read the board's decision because they never looked at Newman's mark. They kept pointing to Terry's own identity and saying, it doesn't point to you. But, I mean, he established a prima facie case of identity by putting in the DBA business certificate. It's just like putting in your birth certificate or your photo ID. That's your identity. That's your prima facie case. That is our identity. And then, so, having established that, then the board went off and looked at the wrong... It's like looking through the telescope at the wrong end. They kept looking at Randall Terry and saying, prove your identity to us. But what they said they were doing was just the second prong. There's the mark point, uniquely and unmistakably. But they never actually used that. They created a new test. One that they didn't cite to. There's no logic behind it. It doesn't make sense. If they had stuck to the test, I think they would have examined the evidence of intent. Let me touch upon that briefly. But they did... The board, particularly in the reconsideration, did make findings that there was no intent to make people think that Mr. Terry was involved in Mr. Newman's current activities. Right. But the board did not... That's not lacking in substantial evidence support, is it? No, but I think they used the wrong test. They heightened the standards so high they wanted to say, did Newman intentionally usurp your identity? You, Randall Terry. And I think the intent is... The intent should be just the intent to use something that you did not create. It's so easy to apply standard. People know whether or not they created something. And you should be able to... Any trademark owner can tell you the origin of the mark. How would you think of that? And that's the test here. What does your mark point to? If he said, oh, it points to... I mean, some of the other examples make no sense that were offered. Because once you know what the services are, activities in the pro-life field, a lot of his examples just do not make any sense. And Notre Dame says, look at the goods and weigh the mark. So his intent is simply to take something that he did not create. He took the association of a business organization from 1986. He was not a part of it. And he wanted to use it. Because it was very valuable. He says so. But his intent is to point to the organization Operation Rescue. Right, right. But it's not necessarily to point to Randall Terry. And that's what you have to prove. It would just be like saying, if somebody tries to falsely trademark the word Apple, that they mean to point to Steve Jobs. Well, that's not necessarily true, even though Steve Jobs was so closely identified with Apple. So it isn't your problem that we can accept that Mr. Newman is trying to play on the name Operation Rescue, clearly. There may have been some kind of contractual obligations or other things, but it doesn't seem like it's pointing falsely to Mr. Terry's name. It may be playing on a group he created and founded and was the main person behind, but it doesn't violate the falsely pointing to, does it? Yes, because Operation Rescue is an element of Randall Terry's identity. It's just like someone having a nickname or a stage name. He has a DBA that says, I am Operation Rescue. I can operate under that name. And I'm known to the world in that name, in headlines, in newspapers. He's continually, like a drumbeat, identified with that organization. Thank you, Mr. Coleman. Your time is up. Thank you.